### UNITED MINERAL & CHEMICAL CORP.
#### v.
### UNITED STATES.
C.D. 3946; Protests 66/14717, etc.

United States Customs Court,
First Division.
Dec. 29, 1969.

---

Allerton deC. Tompkins, New York City, for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Arthur E. Schwimmer and Steven R. Sosnov, New York City, trial attorneys), for defendant.

Before WATSON, MALETZ, and RE, Judges.

WATSON, Judge:

The merchandise at bar, invoiced as "Tesamoll", consists of polyurethane plastic foam laminated to double-faced pressure sensitive polyvinyl chloride tape, covered with a protective liner. The Tesamoll is imported in four different sponge thicknesses of one-eighth, one-quarter, one-half and three-eighths inch.

It was assessed for duty in liquidation at 20 per centum ad valorem under TSUS item 790.55 which provides for specified kinds of flat pressure sensitive articles. Plaintiff claims that it is

properly dutiable at 12½ per centum ad valorem under TSUS item 770.40, which provides for flexible, expanded, foamed or sponge rubber or plastic articles "of polyurethane" or, alternatively, at 17 per centum ad valorem under TSUS item 774.60 as other articles, not specially provided for, of rubber or plastics.[1]

The competing provisions are as follows:

[Classified] Schedule 7, Part 13, Subpart A.

*Subpart A headnotes:*

\* \* \* \* \* \* \* \*

2. The term "pressure sensitive", as used in items 790.50 and 790.55, refers to articles which have an adhesive coating on one or both surfaces that will adhere to other surfaces upon the application of pressure only.

\* \* \* \* \* \* \* \*

790.55 Sheets, strips, tapes, stencils, monograms and other flat shapes or forms, all the foregoing articles (except articles provided for in item 790.50) which are pressure sensitive, with or without protective liners, and whether or not in rolls ........................... 20% ad val.

[Claimed] Schedule 7, Part 12, Subpart A.

Expanded, foamed, or sponge rubber or plastics, and articles not specially provided for wholly or almost wholly of such rubber or plastics:

\* \* \* \* \* \* \* \*

Flexible:

770.40 of polyurethane ....................... 12.5% ad val.

Schedule 7, Part 12, Subpart D.

Articles not specially provided for, of rubber or plastics:

\* \* \* \* \* \* \* \*

774.60 Other .............................. 17% ad val.

---

The importation (exhibits 1 through 6) is a cushioning material which is used primarily as a noise and shock absorber but also as weather stripping tape around windows to protect against the cold and wind. "Polyurethane foam", the president of the importing company testified,[2] "has the characteristic of absorbing noise or shock, because it is spongy material." The half-inch thick foam is used where there is much noise; the one-eighth inch thick foam where there is less. Each foam thickness has specific characteristics with respect to absorbing noise and shock.

The polyurethan foam material (collective exhibit 7) is also sold without the pressure sensitive tape backing by the importer herein for the same applications as the Tesamoll at bar. The latter, however, is more convenient to use be-

1. A claim under TSUS item 773.30 was abandoned at the trial.

2. Plaintiff called one witness and submitted eight exhibits; defendant submitted a collective exhibit consisting of four brochures used by plaintiff to advertise Tesamoll.

cause the adhesive tape will keep it in place.

The polyurethane foam is not imported separately because it is available in the United States at a much lower price; but, sometimes, the double-faced tape with its protective liner (exhibit 8) is imported separately. This polyvinyl chloride tape, the witness testified, is similar to the flat pressure sensitive tapes he handles in his business.

The imported article is referred to in one of plaintiff's advertising sheets as "Tesa Foamstik Tape" and is described therein as follows:

> The foam material which forms the basis of tesa foamstik tape is one of the Urethanes, formed by mixing together a liquid alkyd resin, a diisocyanate, and some free water, in proportions and under conditions to give a flexible and resilient foam.

> A poly-vinyl chloride film 0.0015–0.006 inches thick, with a tensile strength of 22–30 pounds/inch of width, is permanently laiminated [sic] to the foam and forms the carrier for the pressure-sensitive, adhesive mass. The adhesive surface is protected and masked by a grained poly-vinyl chloride liner, which is also embossed so that it can be easily peeled off as the tesa foamstik tape strip is applied. [R. 34, 35.]

We find, from the evidence of record, and examination of the samples, that the importation is an entirety, consisting of polyurethane plastic foam permanently laminated to double-faced pressure sensitive tape, the tape being the polyvinyl chloride film base which carries the "pressure sensitive, adhesive mass."

 We perforce conclude therefrom that the merchandise at bar is something more than the pressure sensitive tape, or other pressure sensitive articles provided for in item 790.55: it is an article comprised in part of tape. (Nor is it a manufacture of tape, as plaintiff contends, by reason of the stipulation entered into, which is discussed *infra*.) The fact that the importer denominates the Tesamoll as "tape" in its sales brochures cannot bring it within the purview of item 790.55. Even if it were "pressure sensitive tape", the merchandise would be excluded from classification thereunder as it is not "flat" within the intendment of that provision (item 790.55 provides for "sheets, strips, tapes * * * and *other flat* shapes or forms * * *") or within the common meaning of that term.

"Flat" is defined in Webster's New World Dictionary of the American Language (College Edition, 1960), as

> 1. having a smooth, level surface; having little or no depression or elevation. * * *

and in Funk & Wagnalls New Standard Dictionary of the English Language (1942) as—

> 1. Having a surface that is a horizontal plane, or nearly so; level; without unevenness or inclination; also, without prominences or depressions; not curved or round or uneven; as, a *flat* country.

The spongy, flexible, resilient article herein does not have a smooth, level surface. The foam portion, as is evident from the samples before us, has a highly irregular surface, with depressions and elevations, and depresses easily upon the application of very light pressure. We cannot consider this spongy material as having the quality of flatness contemplated by Congress.

Our view is supported by the explanatory notes to Schedule 7 of the Tariff Classification Study, November 15, 1960, which states, at page 472:

> Item 790.55 would provide for pressure-sensitive tape and other pressure-sensitive articles (other than those provided for in item 790.50). The principal tapes that would be included in this provision are cellophane tape, friction tape, rubber tape, and vinyl plastic tape. These tapes are not currently provided for as such and

therefore are dutiable on the basis of component material of chief value.

The tapes and other pressure-sensitive articles included in the proposed provision are articles which will adhere to other surfaces by the application of light finger pressure without the application of heat or moisture. The rate of duty proposed for this class of article is an estimated weighted average of the rates currently applicable.

The cellophane, friction, rubber and vinyl plastic tapes referred to therein, are well known articles which, we note, have firm, level, smooth surfaces that are "flat" within the common understanding of that term. Moreover, the product at bar, which is totally dissimilar in physical appearance from the aforementioned tapes and, according to the uncontroverted testimony of the witness at the trial in 1967, has been selling all over the country for the "last eleven years" is not even alluded to in these notes.

What we must now consider is the essential nature of the article before us. This, however, was established by the stipulation entered into, unconditionally and without equivocation, by the parties at the outset of the trial, namely, that the articles identified on the invoices as Tesamoll—

are almost wholly of polyurethane plastics within the meaning of General Headnote 9(f) (iii). [R. 3]

This headnote reads as follows:

9. *Definitions*. For the purposes of the schedules, unless the context otherwise requires—

\* \* \* \* \* \*

(f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the

description of an article and a material \* \* \* have the following meanings:

\* \* \* \* \* \*

(iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present; \* \* \*

■ Headnote 9(f) (iii), it will be noted, represents a departure from the value or quantitative concept contained in the definitions given for "of" and "wholly of" in 9(f) (i) and 9(f) (ii), and embraces, instead, a qualitative concept. Thus, as stipulated by the parties hereto, it is the polyurethane plastic (the foam material) not the pressure sensitive tape, which imparts to the article at bar its essential characteristics.

We find, moreover, that the stipulation is fully supported by the record which establishes, without controversion, that the article is used (as is the same material without the adhesive tape) for the shock and noise absorption characteristics imparted by the plastic foam.³

The stipulation also brings the Tesamoll directly within the purview of the superior heading to item 770.40. Although conceding this point, defendant claims that the importation is precluded from classification as an article "of polyurethane" under item 770.40 by reason of General Headnote 9(f) (i) ⁴ which limits the provision to articles "wholly or in chief value" of polyurethane. Defendant has misconstrued the purport of this provision.

The superior heading to item 770.30 through 770.80 reads:

Expanded, foamed, or sponge rubber or plastics, and articles not specially provided for *wholly* or *almost wholly of* such rubber or plastics:

[Emphasis added.]

---

3. Labeling the article at bar as "tape" within the context of item 790.55, is, in the face of this stipulation and the evidence of record, tantamount to letting the tail wag the dog.

4. General Headnote 9(f) (i) states that "'of' means that the article is wholly or in chief value of the named material".

■ As we construe it, the foregoing encompasses expanded, foamed, and sponge rubber or plastic articles, not specially provided for, which are (1) wholly of, or (2) almost wholly of, such rubber or plastics. This means (1) articles which are, except for negligible or insignificant quantities of other materials, composed completely of such rubber or plastics (Headnote 9(f) (ii)) [5] or (2) articles, the essential character of which is imparted by such rubber or plastics, notwithstanding that significant quantities of some other material may be present (Headnote 9(f) (iii).)

It is noteworthy that none of the items listed thereunder is qualified by the phrase "wholly or almost wholly of" or any part thereof: item 770.30 covers all the articles in the superior heading which are not "flexible" and, under the inferior heading "Flexible", items 770.-40, 770.45, and 770.70 cover articles which are "of" polyurethane, cellulose and natural rubber, respectively.

■ It seems clear to us that the term "of" in these last named items, including 770.40, is used elliptically for the complete phrase "wholly or almost wholly of". It would do violence to the intent and meaning of the superior heading to wrench the aforesaid phrase out of its context and to substitute therefor the term "of" with its more limiting definition. Defendant's circumscribed construction of this provision would emasculate it of the qualitative concept Congress intended to apply thereto.

The Submitting Report to the Tariff Classification Study refers to the tabular system devised by the Tariff Commission for the revised tariff schedules which have superior tariff descriptions subdivided into inferior descriptions, and comments at page 9, that—

> * * * Under this system, a superior heading can be subdivided and limited, but cannot be enlarged by an inferior heading. * * *

■ It is axiomatic that neither can a superior heading be *revised* by an inferior heading.

We also note the testimony (unrefuted by defendant) of the witness herein that, prior to the adoption of TSUS, he paid duty of 12½ per centum on the merchandise at bar which his counsel stated (without contradiction of Government counsel) was classified under paragraph 1537 of the Tariff Act of 1930 (R. 20, 21).

The explanatory notes to schedule 7 of the Study, *supra,* state at pages 448–449—

> Items 770.30 through 770.80 cover expanded, foamed, or sponge rubber or plastics and articles wholly or almost wholly of such rubber or plastics. These groups of products are distinctively different from other rubber or plastics products.
>
> * * * * * *
>
> * * * Most imports of polyurethane products have been classified by similitude to natural rubber products in paragraph 1537(b). Therefore, item 770.40 covering articles of polyurethane reflects the existing rate for rubber products in paragraph 1537 (b).

■ Upon the stipulation and the evidence of record herein, we find that the Tesamoll at bar is an article almost wholly of polyurethane plastics within the meaning of the superior heading to item 770.40 and is properly classifiable under this item.

In view of our findings, we do not reach plaintiff's alternative claim under item 774.60 which plaintiff acknowledges is the "basket" clause for other articles, not specially provided for, of rubber or plastics.

The claim under item 770.40 is sustained; the claim under item 774.60 is overruled; and the claim under item 773.30 is dismissed.

Judgment will be entered accordingly.

5. Headnote 9(f) (ii) defines "wholly of" as meaning that the article is "except for negligible or insignificant quantities of some other material or materials, composed completely of the named material".